**David H. TULLIS, et al., Plaintiffs,**

v.

**UMB BANK, N.A., et al., Defendants.**

**No. 3:06 CV 7029.**

United States District Court,
N.D. Ohio,
Western Division.

Nov. 21, 2006.

---

Gregory R. Elder, James M. Tuschman, Marvin A. Robon, Barkan & Robon, Maumee, OH, for Plaintiffs.

Amy L. Phillips, Brendon P. Friesen, Jeffrey M. Embleton, Mansour Gavin Gerlack & Manos, Cleveland, OH, Mark C. Abramson, Scott A. Haselman, Robison, Curphey & O'Connell, Toledo, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

ZOUHARY, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss (Doc. No. 20), to which Plaintiffs filed a Memorandum in Opposition (Doc. No. 31), and Defendant filed a Reply (Doc. No. 33). The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1331.

### BACKGROUND

Plaintiffs David Tullis and Michael Mack are two medical doctors who maintained pension funds through the Toledo Clinic Employees' 401(k) Profit Sharing Plan (the Plan), an ERISA-governed pension plan. Defendant UMB Bank, N.A., was the Trustee for the Plan. Plaintiffs' accounts, while administered by Defendant, were completely self-directed.

In the early 1990s, Plaintiffs engaged the services of William Davis (Davis), of Continental Capital Corporation (CCC), as their investment advisor. Davis, acting as each Plaintiff's agent, made various investments with Plaintiffs' pension funds. In October 1999, the SEC entered a Temporary Restraining Order against CCC because two of its securities brokers engaged in fraudulent activities. Plaintiffs contend that Defendant knew of these fraudulent activities, but failed to inform Plaintiffs (Compl.¶ 21).

In April 2001, Defendant filed suit against Davis and a subsidiary of CCC on behalf of other Plan participants (Compl.¶ 24(e)). That suit alleged that several investments made by Davis were not liquid, had rapidly declined in value, had no marketability, or were non-existent. Plaintiffs contend that Defendant again failed to inform them of Davis' or CCC's fraudulent activities. *Id.* Consequently, Plaintiffs continued to rely on Davis and CCC. Further, Defendant continued to accept and honor allegedly forged investment directives from Davis without consulting or warning Plaintiffs.

In Spring 2003, CCC and its related entities stopped doing business, and were subsequently taken over by the Security Investor Protection Program. A bankruptcy trustee has since been appointed to liquidate and distribute CCC's assets, and Davis recently pled guilty to twenty-five criminal counts relating to his fraudulent activities.

Plaintiffs allege that as result of Davis' activities, their pension accounts have incurred significant losses. Specifically, Plaintiff Tullis alleges that as of February 28, 2003, Defendant represented the value of Tullis' retirement assets to be $724,561.29, while their actual value was $142,269.41, a difference of $582,291.88 (Compl.¶ 13). Plaintiff Mack contends that on July 1, 2001, Defendant represented the value of his retirement assets to be $1,613,407.87 (Compl.¶ 14). However, when Mack attempted to withdraw his assets upon retirement, those assets turned out to be worth only $420,793.57, a difference of $1,192,614.30 (Compl.¶¶ 14–15).

Plaintiffs initially sued Davis, CCC, Defendant, and others in the Lucas County Court of Common Pleas, Case Nos. CI0200302954 and CI0200303694. Those cases were stayed as a result of various bankruptcy proceedings, so Plaintiffs dismissed Defendant from those suits and filed the instant action. Here, Plaintiffs allege six causes of action: (1) "Breach of

Fiduciary Duty;" (2) "Additional Breaches of Fiduciary Duty, Violation of ERISA & Negligence;" (3) "Negligence, Failure to Warn & Additional Breaches of Fiduciary Duty;" (4) "Bogus Investments, Breaches of Fiduciary Duty & Fraud;" (5) "Fraud, Misrepresentation and Negligent Misrepresentation;" and (6) "Violation of Securities Law."

Plaintiffs defend the Motion to Dismiss with three legal theories (Plaintiffs' Mem. Opp. P. 1):

1. ERISA permits Plaintiffs to bring suit as the affected subclass of the pension plan and all authority cited by Defendant UMB Bank, N.A. applies exclusively to defined benefit plans not implicated in this controversy.

2. Plaintiffs also have a claim for equitable relief under 29 U.S.C. § 1132(a)(1)(B) which Defendant UMB Bank, N.A. failed to discuss and is unaffected by the case authority cited by Defendant.

3. Defendant UMB Bank, N.A. committed repeated violations of the Securities Exchange Act of 1934, Section 10b–5 and Plaintiffs' claims are unaffected by the case authority cited by Defendant UMB Bank, N.A.

Plaintiffs' first two theories of recovery are without merit and must be dismissed. Plaintiffs' Securities Exchange Act claim does not meet the pleading requirements imposed by the Private Securities Litigation Reform Act and must be dismissed. Further, Plaintiffs' state-law causes of action are preempted by ERISA. Accordingly, Defendant's Motion to Dismiss is granted.

## DISCUSSION

### 1. Standard of Review

When deciding a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint. In scrutinizing the Complaint, the Court is required to accept the allegations stated in the Complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), while viewing the Complaint in a light most favorable to Plaintiffs, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that Plaintiffs can prove no set of facts that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Westlake,* 537 F.2d at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed.2003).

### 2. Plaintiffs' State–Law Claims

■ ERISA preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). "Congress' intent in enacting ERISA was to completely preempt the area of employee benefit plans and to make regulation of benefit plans solely a federal concern.... Virtually all state law claims relating to an employee benefit plan are preempted by ERISA. It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir.1991) (internal citations omitted).

Plaintiffs have alleged several state-law causes of action, including breach of fiduciary duty, negligence, failure to warn, fraud, negligent misrepresentation, and violation of Ohio securities laws. Each of these claims is clearly related to the Plan, and Plaintiffs essentially conceded this point when they declined to dispute pre-

emption in their Memorandum in Opposition. Accordingly, Plaintiffs state-law claims are preempted by ERISA, and therefore dismissed.

### 3. Breach of Fiduciary Duty under ERISA

■ Plaintiffs claim that Defendant breached its duty as an ERISA fiduciary, resulting in significant losses to Plaintiffs' pension accounts. ERISA specifically allows the Secretary of Labor, or a participant, beneficiary, or fiduciary, to bring a civil action seeking relief for the plan for a breach of fiduciary duty. 29 U.S.C. § 1132(a)(2).[1] 29 U.S.C. § 1109 establishes the specifics of an ERISA breach of fiduciary duty claim:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary....

Thus, "[p]lan fiduciaries who breach any of their ERISA-imposed responsibilities, obligations, or duties may be held personally liable for damages, for restitution, and for 'such other equitable and remedial relief as the court may deem appropriate.'" *Pfahler v. National Latex Co.*, 405 F.Supp.2d 839, 843 (N.D.Ohio 2005) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252, 113

S.Ct. 2063, 124 L.Ed.2d 161 (1993)). "In ERISA, Congress sought to provide fair and generous remedies for plan participants without imposing ruinous personal liability on plan fiduciaries." *LaRue v. DeWolff, Boberg & Assocs.*, 458 F.3d 359, 364 (4th Cir.2006).

■ Plaintiffs, as two Plan beneficiaries, seek to impose liability on Defendant, an ERISA "fiduciary," for breaching its duty. Specifically, Plaintiffs seek compensatory damages to remunerate for the losses incurred by their individual pension accounts. This form of recovery, however, is prohibited by ERISA. Specifically, pursuant to § 1109, a fiduciary is only liable for "any losses **to the plan** resulting from each such breach, and to **restore to such plan** any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a) (emphasis added). Indeed, "Section [1132(a)(2)] actions for breach of fiduciary duty must be brought 'in a representative capacity on behalf of the plan as a whole' and recovery for a breach of fiduciary duty 'inures to the benefit of the plan as a whole.'" *Pfahler*, 405 F.Supp.2d at 843 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–43, n. 9, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)).

To circumvent this requirement, Plaintiffs claim to be suing on behalf of a "subclass" of the Plan, namely themselves. Plaintiffs rely on the Sixth Circuit decision in *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir.1995), which held that "a subclass of Plan participants may sue for a breach of fiduciary duty." *Id.* at 1453. *Kuper*, however, is distinguishable from the instant

---

**1.** Section 1132 provides, in pertinent part:

(a) Persons empowered to bring a civil action. A civil action may be brought—

\* \* \* \* \* \*

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [29 U.S.C. § 1109]....

action. In *Kuper*, the "subclass" of plan participants included all former salaried employees of a company that participated in the plan at issue during a specific period of time. Further, that "subclass" was certified pursuant to FED. R. CIV. P. 23. Here, Plaintiffs do not seek to sue in such a representative capacity.

Finally, and most importantly, the *Kuper* court held that " § 1109 contemplates that breaches of fiduciary duty **injure the plan,** and, therefore, any recovery under such a theory **must go to the plan.**" *Kuper,* 66 F.3d at 1452–53 (emphasis added) (citing *Adcox v. Teledyne Inc.,* 21 F.3d 1381 (6th Cir.1994), *cert. denied,* 513 U.S. 871, 115 S.Ct. 193, 130 L.Ed.2d 126 (1994)). The *Kuper* court made an express determination that allowing the plaintiff class to proceed "would benefit the Plan as a whole and would foreclose any subsequent litigation because it would cure any harm that the Plan suffered." *Kuper,* 66 F.3d at 1453. In the instant action, it cannot be said that a recovery by Plaintiffs would benefit the Plan as a whole, nor would recovery bring finality by precluding subsequent litigation by other Plan participants.

In addition to *Kuper*, Plaintiffs cite *In re Schering–Plough Corp. ERISA Litig.,* 420 F.3d 231 (3rd. Cir.2005), and *Rogers v. Baxter Int'l, Inc.,* 417 F.Supp.2d 974 (N.D.Ill.2006) for the proposition that a subclass of plan participants can sue for breach of fiduciary duty. But in neither case did the plaintiffs seek individual compensatory damages. In *In re Schering–*

*Plough Corp. ERISA Litig.,* the plaintiffs sought relief to their plan, specifically, payments to the plan to remedy damage caused to the plan itself. *See In re Schering–Plough Corp. ERISA Litig.,* 420 F.3d at 241. In *Rogers,* the plaintiffs were a large class of plan participants, not two individuals seeking individualized compensatory damages. *Rogers,* 417 F.Supp.2d at 982.

Plaintiffs have not filed a class action,[2] nor do they seek relief for the Plan. Instead, it is quite clear that Plaintiffs seek individualized compensatory damages to remunerate for their individual claims, not relief to the Plan either as a whole or in part. Accordingly, Plaintiffs' claims for breach of fiduciary duty are not cognizable under ERISA, and Defendant's Motion to Dismiss should be granted.

In doing so, the Court acknowledges that a dismissal of the instant action may produce an unjust result. When addressing a similar set of facts,[3] the Fourth Circuit addressed the balance struck by Congress when enacting ERISA:

> Though Congress may one day take the remedial step plaintiff desires, it has not yet done so. It is not difficult to imagine why. In crafting ERISA, Congress sought a careful balance between the goals of "ensuring fair and prompt enforcement of rights under a plan" on the one hand and "encourag[ing] ... the creation of such plans" on the other. *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 215, 124 S.Ct. 2488, 159 L.Ed.2d

---

**2.** *See, e.g., Pfahler,* 405 F.Supp.2d at 845–46 ("Plaintiffs have not identified, nor has this Court found, a single case in which plan participants were permitted to bring a Section 502(a)(3) breach of fiduciary duty claim on behalf of absent plan participants without adhering to the strictures of Rule 23 of the FED.R.CIV.P. On the contrary, courts have consistently addressed whether such representative claims could go forward by assessing

whether the plaintiffs met Rule 23's requirements." (citations omitted)).

**3.** In *LaRue v. DeWolff, Boberg & Assocs.,* 450 F.3d 570, 572 (4th Cir.2006), the plaintiff's self-directed 401(k) account was allegedly depleted by $150,000 because the defendant fiduciary failed to follow the plaintiff's investment instructions.

312 (2004) (internal quotation marks omitted). It would certainly be reasonable for Congress to have concluded that imposing personal financial liability on fiduciaries under circumstances such as this—where there was no unjust enrichment, unlawful possession, or self-dealing—would seriously deter plan formation and the service of qualified individuals and institutions as fiduciaries. *Compare, e.g., Mertens,* 508 U.S. at 262–63, 113 S.Ct. 2063 (discussing negative effects of expansive ERISA liability). Congress's decision to omit such liability hardly leaves a plan participant or beneficiary in plaintiff's position without recourse. He could, for example, seek an injunction compelling compliance with his investment instructions, *see* 29 U.S.C. § 1132(a)(3), or, under appropriate circumstances, bring suit on the plan's behalf to remove the fiduciary, *see* 29 U.S.C. § 1109(a). In Congress's view, such alternative remedies are sufficient to keep fiduciaries from breaches of fiduciary duty that result in no benefit whatsoever to themselves. We possess no authority "to adjust the balance ... that the text adopted by Congress has struck." *Mertens,* 508 U.S. at 263, 113 S.Ct. 2063.

*LaRue,* 450 F.3d 570, 577–78 (4th Cir. 2006). In addition to the remedies mentioned in *LaRue,* Plaintiffs' recourse seems to be against Davis and CCC, against whom an ultimate recovery may well be unlikely because they have no assets. However, this Court has "no authority to adjust" the legislation.

### 4. Relief under 29 U.S.C. § 1132(a)(1)(B)

 Next, Plaintiffs argue in the alternative that they are entitled to recover under 29 U.S.C. § 1132(a)(1)(B). This section provides that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan...." *Id.*

First of all, Plaintiffs' Complaint does not allege a claim for "benefits due." The Complaint only alleges that Defendant breached certain duties to Plaintiffs; there is absolutely nothing from which the Court can conclude that Plaintiffs intended to plead a claim for wrongfully withheld benefits. Rather, the Complaint only seeks compensatory (and punitive) damages, which are not recoverable under 29 U.S.C. § 1132(a)(1)(B). *See, e.g., Aks v. United Missouri Bank,* 309 F.Supp.2d 1275, 1279 (D.Kan.2004).

However, even if the Complaint could be construed to allege a claim for wrongly withholding of benefits due, such a claim is not cognizable in this situation. It cannot be said that Defendant is wrongfully withholding benefits: Plaintiffs' Complaint alleges that these "benefits" no longer exist as a result of Davis' actions (and Defendant's alleged inaction). Plaintiffs are apparently arguing that the "benefit" due in this instance is the difference between the actual and stated values of the assets in their individual pension accounts. It is only logical, however, that in a self-directed 401(k) account, the only "benefits" that can be "due" are those assets which actually exist in the account and can be liquidated.

 Although it has not been pled, Plaintiffs also infer that they are entitled to restitution, an equitable remedy. " '[F]or restitution to lie in equity,' as opposed to at law, 'the action generally must seek not to impose personal liability on the defendant, but to restore the plaintiff particular funds or property in the defendant's possession.' " *LaRue,* 450 F.3d at 575 (quoting *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 214,

122 S.Ct. 708, 151 L.Ed.2d 635 (2002)). As this is not a situation "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession," *Knudson,* 534 U.S. at 213, 122 S.Ct. 708, restitution is not an appropriate remedy here.

### 5. Violation of Securities Laws

█ Plaintiffs' final contention is that Defendant violated the Securities Exchange Act of 1934, specifically 15 U.S.C. § 78j. This section provides, in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> . . . . .
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

*Id.* The specific pleading requirements for Securities Exchange Act claims were set forth in the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u–4(b):

> (b) Requirements for securities fraud actions.
>
> (1) Misleading statements and omissions. In any private action arising under this title in which the plaintiff alleges that the defendant—
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the state-

ments made, in the light of the circumstances in which they were made, not misleading;

> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.
>
> (2) Required state of mind. In any private action arising under this title in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this title, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind . . . .

Dismissal is the proper remedy for failing to meet these pleading requirements. *See* 15 U.S.C. § 78u4(b)(3)(A).

Plaintiffs' Complaint fails to satisfy the heightened pleading requirements of 15 U.S.C. § 78u–4(b). Plaintiffs' "Violation of Securities Laws" claim does not even reference the Securities Exchange Act. The Complaint is insufficient to enable Defendant to craft an informed answer as to this issue Accordingly, Plaintiffs' Securities Exchange Act claim is dismissed, without prejudice, for lack of particularity pursuant to 15 U.S.C. § 78u–4(b).

### CONCLUSION

Defendant's Motion to Dismiss (Doc. No. 20) is granted, and Plaintiffs' Complaint is dismissed as to all counts. Plaintiffs' Securities Exchange Act claim is dismissed without prejudice, but all other claims are dismissed with prejudice. Additionally, pursuant to Defendant's Notice of Willingness to Voluntarily Dismiss Counterclaim (Doc. No. 39), Defendant's Counterclaim

(Doc. No. 5) is dismissed without prejudice.

IT IS SO ORDERED.