RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0047p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DAVID H. TULLIS, MICHAEL S. MACK,
> *Plaintiffs-Appellants/Cross-Appellees,*

    *v.*

UMB BANK, N.A.,
> *Defendant-Appellee/Cross-Appellant.*

Nos. 06-4632/4633

>

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 06-07029—Jack Zouhary, District Judge.

Argued: October 25, 2007

Decided and Filed: January 28, 2008

Before: MERRITT, ROGERS, and McKEAGUE, Circuit Judges.

---

### COUNSEL

**ARGUED:** Marvin A. Robon, BARKAN & ROBON, Maumee, Ohio, for Appellants. Scott A. Haselman, ROBISON, CURPHEY & O'CONNELL, Toledo, Ohio, for Appellee. Elizabeth Hopkins, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Marvin A. Robon, Gregory R. Elder, David H. Mylander, BARKAN & ROBON, Maumee, Ohio, for Appellants. Scott A. Haselman, Mark C. Abramson, ROBISON, CURPHEY & O'CONNELL, Toledo, Ohio, for Appellee. Elizabeth Hopkins, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae.

---

### OPINION

---

#### I.

    MERRITT, Circuit Judge. This appeal raises the question of whether two physicians can sue to recover losses from a bank that allegedly failed to notify them of fraudulent activities affecting their ERISA-governed pension plans. The District Court for the Northern District of Ohio held that the two physicians did not have standing to bring their breach of fiduciary duty claims under ERISA because they sought individual damages – and not, as it deemed necessary, damages for the plan as a whole – from the defendant bank. Additionally, the plaintiffs argue in this appeal that an indemnity agreement between the Defendant and the ERISA-plan administrators contravenes 29 U.S.C. § 1110(a) by impermissibly shielding a fiduciary from liability. Finally, the defendant has filed a cross-appeal, contending that the District Court erred by dismissing, without prejudice instead

of with prejudice, the plaintiffs' improperly pled claims under the Private Securities Litigation Reform Act.

We hold that the plain language and intent of ERISA permits an individual plan participant to seek recovery of losses due to a fiduciary breach. Because we hold that the plaintiffs have standing to pursue their claims under 29 U.S.C. § 1132(a)(2), thereby permitting the case to proceed to the merits, we pretermit resolution of both the plaintiffs' argument that the Master Trust Agreement contravenes 29 U.S.C. § 1110(a) and the defendant's cross-appeal that the District Court erred by failing to dismiss the Private Securities Litigation Reform Act claims with prejudice.[1]

## II.

Plaintiffs David Tullis and Michael Mack are two physicians from Toledo who maintained pension funds through the Toledo Clinic Employees' 401(k) Profit Sharing Plan ("Plan"), an ERISA-governed, "defined contribution" pension plan.[2] In the early 1990s, the plaintiffs chose William Davis of Continental Capital Corporation ("Capital") as their investment advisor. In October 1999, the U.S. Securities and Exchange Commission entered a Temporary Restraining Order against Capital because two of its brokers were engaged in fraudulent activities. The plaintiffs contend that the defendant, UMB Bank, which served as the Trustee for the plan, knew of the fraud yet failed to inform them.

In April 2001, the defendant bank filed suit against Davis and a subsidiary of Capital on behalf of the Plan, alleging that several investments were improper, severely declined in value immediately after being purchased, or simply never took place. The plaintiffs allege that the defendant again failed to inform them of either Davis' or Capital's fraudulent activities, a required duty of a fiduciary. Additionally, the defendant continued to accept and honor allegedly forged investment directives from Davis without consulting or warning the plaintiffs. Consequently, according to the complaint, the plaintiffs continued to maintain their investment account with Davis.

In the spring of 2003, a court order ended Capital's ability to conduct business and appointed the Security Investor Protection Program as Trustee. During the ensuing bankruptcy proceedings, it was discovered that a number of Davis' investments were nonexistent. At this point, the plaintiffs discovered the full extent of the losses to the value of their pension plans. Tullis alleges that as of February 28, 2003, UMB Bank represented the value of his retirement assets to be $724,561.29, while the actual value was $142,269.41, a difference of $582,291.88.[3] Mack contends that on July 1, 2001, the defendant represented the value of his retirement assets to be $1,613,407.87. When Mack attempted to withdraw those assets, however, he discovered that they were only worth $420,793.57, a difference of $1,192,614.30.

The Plaintiffs initially filed suit against Davis, Capital, the defendant, and others in the Lucas County Court of Common Pleas. Those cases were stayed pending the outcome of bankruptcy

---

[1] Our holding that standing exists under ERISA also allows us to pretermit the following issues raised by the Plaintiffs: (1) that they are a "subclass" of the plan and thus eligible to recover under the plan; (2) that the District Court's holding that Plaintiffs lacked standing renders 29 U.S.C. § 1104(c) a legal "nullity"; and (3) that ERISA addresses three distinct categories of pension plans, and that the plaintiffs had "individual account plans."

[2] A "defined contribution plan" is "a pension plan which provides for an individual account for each participant for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account. ERISA Section 3(34)." 29 U.S.C. § 1002. The plan in *Larue v. Dewolff*, discussed *infra*, was also a defined contribution plan.

[3] According to the complaint, the Defendant indicated that Tullis had over $1,000,000 in assets in 2001.

proceedings. The plaintiffs then requested that the Toledo Pension Plan, which administers the 401(k) program, bring suit against the defendant for the bank's alleged breach of fiduciary duties as an ERISA trustee. The Plan declined to do so, citing a Master Trust Agreement ("MTA") that includes an indemnification clause holding the bank harmless from claims. Consequently, the plaintiffs filed this action in the Northern District of Ohio on January 24, 2006. The defendant, in turn, filed a motion to dismiss.

The District Court granted the defendant's motion to dismiss the plaintiffs' case after finding: (1) that the plaintiffs lacked standing to bring their ERISA claims; (2) that ERISA preempts any state law causes of action; and (3) that claims based on the Securities Exchange Act did not meet the pleading requirements imposed by the Private Securities Litigation Reform Act (PSLRA). As to the standing to bring the breach of fiduciary duties claims, the District Court agreed with the defendant that an action under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), had to be brought "*in a representative capacity* on behalf of the plan as a whole" and that the plaintiffs had only sought recovery for individual losses to their plan accounts. *Tullis v. UMB Bank*, 464 F. Supp. 2d 725, 729 (N.D. Ohio 2006) (emphasis added).

In this appeal, the plaintiffs argue that the District Court erred by denying them standing to bring the breach of fiduciary duty claims. The plaintiffs do not challenge the lower court's preemption ruling. The Secretary of Labor has filed an *amicus curiae* brief, joining the plaintiffs in arguing that individual beneficiaries do have standing to bring their claims under § 1132(a)(2).

## III.

We review *de novo* a district court's dismissal pursuant to the terms of Federal Rule of Civil Procedure 12(b)(6). *Miller v. Champion Enterprises, Inc.*, 346 F.3d 660, 671 (6th Cir. 2003).

### *Plaintiffs' standing under ERISA*

The Employee Retirement Income Security Act (ERISA) governs employee benefit plans and establishes both the obligations of plan fiduciaries and the remedies for any breach of those duties. ERISA permits civil actions to be brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 409 (29 U.S.C.§ 1109)." *See* ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). ERISA section 409, in turn, governs liability for breaches of fiduciary duty and reads in relevant part:

> (a) Any person who is a fiduciary with respect to a plan who breaches *any* of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan *any losses to the plan* resulting from *each such breach*, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . .

(emphasis added). Additionally, ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), allows a "participant, beneficiary, or fiduciary" to enjoin an action that violates any provision within ERISA or "obtain other equitable relief." Thus, "[p]lan fiduciaries who breach any of their ERISA-imposed responsibilities, obligations, or duties may be held personally liable for damages, for restitution, and for 'such other equitable remedial relief as the court may deem appropriate.'" *Pfahler v. Nat'l Latex Co.*, 405 F. Supp. 2d 839, 843 (N.D. Ohio 2005) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993)). According to the plaintiffs, the defendant – a fiduciary under the terms of ERISA – breached its obligation by failing to warn them of the fraudulent investments and should be liable

for the resulting damages.  The complaint seeks compensation for losses under § 1132(a)(2), as well as restitution under § 1132(a)(3).[4]

The District Court held that the plaintiffs did not have standing to pursue their § 1132(a)(2) claims after concluding that the damages sought did not benefit the plan directly, but rather only benefitted the individuals.  To support this conclusion, the lower court stressed the language of § 1109(a), which states that the fiduciary is liable for "'any losses *to the plan* resulting from such brief.'"  *Tullis*, 464 F. Supp. 2d  at 729 (emphasis in original) (citing *Pfahler*, 405 F. Supp. 2d at 843). According to the District Court, this language only permits recovery where a plaintiff sues in a "representative capacity." *Id*.  The District Court attempted to distinguish other cases where courts had permitted actions for damages to proceed under § 1132(a)(2), focusing on the supposed difference between recovery to the plan and recovery to specific individual accounts. *See Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995); *Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974 (N.D. Ill. 2006).  The court characterized our *Kuper* decision as allowing standing for a "subclass" of ERISA plan participants, while emphasizing that the *Rogers* case involved a class action.  According to the District Court, therefore, the plaintiffs did not have standing because they did not "file[] a class action . . . [or] seek relief for the Plan." *Tullis*, 464 F. Supp. 2d  at 730.

Before explaining the errors in the District Court's reasoning, it is necessary to discuss a Fourth Circuit opinion that informed much of the District Court's analysis, *Larue v. Dewolff*, 450 F.3d 570 (4th Cir. 2006), *cert. granted* 2007 U.S. LEXIS 7731 (June 18, 2007).[5]  In *Larue*, the plaintiff — a participant in a 401(k) managed by DeWolff, Boberg & Associates (DeWolff) — alleged that he had directed DeWolff to make certain changes to the investments under his plan, but that the firm had not honored his request.  According to the complaint, this omission resulted in losses of approximately $150,000.  The Fourth Circuit found that the plaintiff did not have standing to bring a claim under § 1132(a)(2) for three reasons: (1) he sought "recovery to be paid into his plan account, an instrument that exists specifically for his benefit"; (2) "[t]he measure of that recovery is a loss suffered by him alone"; and (3) "that the loss itself allegedly arose . . . [from] a duty owed solely to him." *Larue*, 450 F.3d at 574.  According to the court, these factors distinguished the case from incidents where an individual "sues on behalf of the plan itself or on behalf of a class of similarly situated participants." *Id*.

The *Larue* Court concluded that this holding comported with both the congressional policy choices embodied in ERISA and with the Supreme Court's holding in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985).  In language quoted by the District Court in the instant case, the *Larue* Court explained the purpose of ERISA as follows:

> Though Congress may one day take the remedial step plaintiff desires, it has not yet done so.  It is not difficult to imagine why.  In crafting ERISA, Congress sought a careful balance between the goals of 'ensuring fair and prompt enforcement of rights under a plan' on the one hand and 'encourag[ing] . . . the creation of such plans' on the other. It would certainly be reasonable for Congress to have concluded that imposing personal financial liability on fiduciaries under circumstances such as this

---

[4]Because we conclude that the plaintiffs have standing under § 1132(a)(2), we do not reach the question of whether Plaintiffs can seek equitable relief under § 1132(a)(3). *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (describing § 1132(a)(3) as a "catchall" provision only applicable for violations in which (a)(2) provides no remedy).

[5] On November 26, 2007, the Supreme Court heard oral arguments on the following two issues: (1) Does § 502(a)(2) of ERISA [i.e. § 1132(a)(2)], permit a participant to bring an action to recover losses attributable to his account in a "defined contribution plan" that were caused by fiduciary breach? (2) Does § 502(a)(3) [i.e. § 1132(a)(3)] permit a participant to bring an action for monetary "make-whole" relief to compensate for losses directly caused by fiduciary breach (known in pre-merger courts of equity as "surcharge")?

-- where there was no unjust enrichment, unlawful possession, or self-dealing -- would seriously deter plan formation and the service of qualified individuals and institutions as fiduciaries.

Congress's decision to omit such liability hardly leaves a plan participant or beneficiary in plaintiff's position without recourse. He could, for example, seek an injunction compelling compliance with his investment instructions, or, under appropriate circumstances, bring suit on the plan's behalf to remove the fiduciary. In Congress's view, such alternative remedies are sufficient to keep fiduciaries from breaches of fiduciary duty that result in no benefit whatsoever to themselves. We possess no authority 'to adjust the balance . . . that the text adopted by Congress has struck.'

450 F.3d at 577-78 (internal citations omitted). In the Supreme Court's *Russell* decision, the plaintiff sought recovery under ERISA for extracontractual compensatory and punitive damages caused by improper and untimely processing of benefit claims. The Supreme Court held that the plaintiff did not have standing because recovery under § 1132(a)(2) must "inure[] to the benefit of the plan as a whole," not to particular persons with rights under the plan. *Russell*, 473 U.S. at 140. Both the District Court and *Larue* found this language to be on point and controlling.

We do not find the *Larue* Court's logic, which the District Court seized upon, to be convincing. First, the plaintiffs and Secretary of Labor, as well as the Solicitor General in *Larue,*[6] convincingly argue that a decision denying standing frustrates the fundamental purpose of ERISA. As the Supreme Court explained in the *Russell* decision, "the crucible of congressional concern" in which ERISA was enacted "was misuse and mismanagement of plan assets by plan administrators," and that "ERISA was designed to prevent these abuses in the future." 473 U.S. at 141 n.8. Indeed, Congress created a "broad remedial" scheme when it enacted ERISA in response to the economic collapse of the Studebaker-Packard Corporation, an event that left many terminated employees without their promised pensions. *See* Brief of the Secretary of Labor as *Amicus Curiae* for Appellants at 7, *Tullis v. UMB Bank* (No. 06-4632/4633) (hereinafter "Brief of Secretary of Labor"). Consequently, while ERISA may have reflected Congress's attempt to define available remedies, the overarching goal of the statute was to ensure that such relief was available in cases of fiduciary breaches. The District Court's holding vitiates this goal by completely precluding any relief for plaintiffs whose recovery could be characterized as benefitting only an individual and not the plan as a whole. The District Court recognized as much, noting that "a dismissal of the instant action may produce an unjust result." 464 F. Supp. 2d at 730. As the United States' brief in support of the plaintiff in *Larue* states, a decision denying standing could negatively — and unjustifiably — impact plan selections involving more than $3.3 trillion in retirement assets by preventing the Secretary of Labor, or another eligible plaintiff, from recovering losses if the breach primarily affected a single account. Brief of the United States as *Amicus Curiae* for Petitioner at 10, *Larue v. DeWolff*, 450 F.3d 570 (U.S. 2007) (No. 06-856) (hereinafter "Brief of the United States"). We are persuaded by the plaintiffs' argument that Congress, by enacting ERISA, sought to protect the interests of individual pension plan participants like the plaintiffs. Furthermore, we do not think that affording individual plan participants the opportunity to vindicate their legitimate interests exposes fiduciaries to the type of excessive liability which might deter future plan formation.

Second, the plain language of the statute compels our conclusion that an individual participant in a defined contribution plan should have standing to seek recovery for losses to their

---

[6] In *Larue*, the United States Solicitor General intervened as *amicus curiae* in support of the petitioner's argument that the Plaintiff had standing to seek recovery against the fiduciary under both §§ 1132(a)(2) and (a)(3). *See* Brief of the United States as *Amicus Curiae* for Petitioner, *Larue v. DeWolff*, 450 F.3d 570 (U.S. 2007) (No. 06-856), *available at* http://www.usdoj.gov/osg/briefs/2007/3mer/1ami/2006-0856.mer.ami.pdf.

pension plan. 29 U.S.C. § 1132(a)(2) authorizes a plan "*participant*" to bring a suit for relief under § 1109(a), which, in turn, provides that "any person who is a fiduciary with respect to a plan who breaches *any* of the responsibilities, obligations, or duties imposed upon fiduciaries by this title, shall be personally liable to make good to such plan, *any losses to such plan resulting from each such breach*." (emphasis added). As the Third Circuit described, the "fiduciary's liability is not limited to plan 'losses that will ultimately redound to the benefit of all participants.'" *In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231, 235 (3d Cir. 2005). Nor does the statute indicate that suit must be brought by a "sub-class" of participants or as a class action. In the instant case, it is beyond dispute that the physicians are participants under the language of § 1132(a)(2). And the plaintiff physicians have alleged that the defendant's failure to notify them of Davis' suspicious investments constituted a breach of fiduciary duty under the plain language of § 1109(a). Finally, they have alleged that the breach of fiduciary duty resulted in losses to the value of their pension plans. Consequently, they have alleged a harm cognizable under the plain language of ERISA.

The District Court concluded that a loss "to the plan" meant that the plaintiffs had to seek compensation in a representative capacity for the entire plan. We are unable to think of any reason why the ability to sue to recover losses should turn on the number of plan participants allegedly affected by the breach; whether one, ten or 1,000 participants are affected, the loss occurs to the plan.[7] Indeed, although the number of affected participants differs, the nature of the relief – the payment of money *to the plan* – is the same regardless of the number of participants to whom the recovered assets are allocated. *See* Brief of the United States at 9. If the plaintiffs are successful in their case, any assets recovered from the defendant would first be paid into the plan, then allocated to their individual accounts, and ultimately paid to them in the form of benefits.[8] Put simply, if we accept the truth of the plaintiffs' allegations, the plan in which they had invested their retirement savings would have had greater assets but for the defendant's actions. Our holding corrects the District Court's *de facto* amendment to ERISA, *i.e.*, requiring the plaintiffs to bring a class action suit in order to recover losses to their plans.

Our case is distinguishable from the Fourth Circuit case in one way — unlike *Larue*, the plaintiffs in the instant case did not specifically allege in their complaint that their plan suffered losses; rather, the plaintiffs repeatedly allege that they, as individuals, "suffered damages."[9] This

---

[7] The problem of accepting the defendant's position in our case is analogous to a hypothetical Justice Breyer posed to the respondent during oral arguments in *Larue*:

> [Imagine] a plan [of] a thousand members. The trustee invests in a thousand diamonds. He puts it in a bank deposit vault. One day he takes all [the] diamonds and runs off to Martinique. We catch him enjoying the sun. We can sue him under [1132(a)] (2), right? That's what [1132(a)] (2) is there for, right? Right. Okay. Now, everything is the same except each of the thousand diamonds was put in individual safe deposit box[es] with the participant's name on it. Everything else is the same. Why should it matter?
> . . . .
> . . . . In both cases, the trustee took [the] diamonds that belonged to the plan and went to Martinique. Now, if you can sue him when the plans are all put in one big safe deposit with the diamonds, why can't you sue him when they're put in [1000] small safe deposit boxes?

Transcript of Oral Argument at 39, *Larue v. Dewolff* (U.S. November 26, 2007) (No. 06-856).

[8] The fact that Mack already received a distribution from the plan does not affect the analysis. Any additional money recovered will be distributed to the plaintiff in the form of an increased benefit. Thus, Mack is a participant within the meaning of 29 U.S.C. § 1002(7) with standing to sue under section § 1132(a)(2) because he is a "former employee" who is or may be "eligible to receive a benefit" from the plan.

[9] This fact was not crucial to the District Court's opinion because it concluded that any benefits recovered by the plaintiffs in their suit would impermissibly go to their individual accounts instead of to the plan *qua* plan. That is, regardless of whether the pleadings contained the language "losses to the plan," the plaintiffs would not have standing

failure to state their claim in a specific manner is not fatal. Although the face of the complaint does not include the exact words "losses to the plan" (*i.e.* that the plan suffered damages), it clearly indicates that the plaintiffs, as participants in an ERISA-governed plan, are seeking recovery for losses to their plan accounts caused by fiduciary breaches. Any assets recovered from the defendant would be payable to the plaintiffs only insofar as they are participants in the plan whose account assets were diminished by the alleged breaches of fiduciary duty. Moreover, the complaint clearly puts the defendant on notice that the plaintiffs are seeking recovery for losses that occurred to their plans. *See* 1-1 Fed. Lit. Guide P 1.34 (MB) (2007) ("Ordinarily, the complaint is not required to set out in detail the facts on which the claim for relief is based. Rather, it must merely provide a statement sufficient to put the defendant on notice of the claim so as to enable the defendant to answer and prepare for trial."). That the plaintiffs are seeking recovery on behalf of their plans is, therefore, implied by the language of the complaint — to wit, that the value of the ERISA plans diminished because of the defendant's actions. To hold otherwise would elevate form over substance, a result we have rejected in other contexts. *See, e.g.*, *Moore v. City of Harriman*, 272 F.3d 759, 773 (6th Cir. 2001) (rejecting an argument that a section 1983 action should be dismissed for failing to include specific language in favor of an approach that focused on whether the complaint provided sufficient notice to the defendant).

Our holding today that the plaintiffs do have standing to bring their claims under § 1132(a)(2) is supported by the balance of existing case law. The majority of circuit courts — including our own — have found standing for individual participants seeking to recover losses to their plans. In *Kuper v. Iovenko*, we reasoned that the "argument that a breach must harm the entire plan to give rise to liability . . . would insulate fiduciaries who breach their duty so long as the breach does not harm all of a plan's participants." 66 F.3d 1447, 1453 (6th Cir. 1995). The District Court determined that this holding was conditional on the *Kuper* Court's description of the plaintiffs as a "subclass" of the plan. But it is unclear at what point a group of individuals becomes sufficiently numerous to constitute a subclass: Three? Five? Fifty? Indeed, such a question has no bearing on the issue: whether one plan participant, two, or a "subclass" sues, a fiduciary must not be shielded from liability for losses to the plan resulting from a breach of a fiduciary duty. As a result, standing exists to pursue a claim under § 1132(a)(2). Other circuits have reached similar conclusions. *See, e.g., Steinman v. Hicks*, 352 F.3d 1101 (7th Cir. 2003) (rejecting the district court's analysis that the plaintiffs could not maintain their case because they were not suing on behalf of the plan) (affirming the lower court on other grounds); *In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231, 232 (3d Cir. 2005) (holding that the plaintiff could "seek money damages on behalf of the fund, notwithstanding the fact that the alleged fiduciary violations affected only a subset of the saving plan's participants"); *Milofsky v. American Airlines, Inc.*, 442 F.3d 311 (5th Cir. 2006) (holding that the lower court should not have dismissed the plaintiff's ERISA claims).

The District Court's attempt to distinguish these holdings based on the Supreme Court's language in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985), is similarly unconvincing. The *Russell* Court stated that recovery under § 1132(a)(2) must "inur[e] to the benefit of the plan as a whole." *Id*. at 140. Unlike the instant case, however, the plaintiff in *Russell* brought suit for compensatory and punitive damages which were not payable to the plan for loss of plan assets, but were rather payable directly to the individual as compensation for the *delay* in payments under a disability plan. The *Russell* Court specifically distinguished relief payable to the plan to recoup losses arising from the mismanagement of plan assets — which is available under the provisions — from relief to be paid directly to an individual as "extracontractual" damages caused by a delay in the payment of a benefit. *Id.* at 143-44. In the instant case, any recovery of losses due to mismanagement would inure to the plan before being allocated to the specific accounts affected by the alleged fiduciary breach. Consequently, the fact that the Supreme Court denied standing for

under the District Court's reasoning.

a situation where the damages were tangential to the plan — that is, for individual pain and suffering caused by a delay — does not control the instant situation where recovery would be directly payable to the plan.

**IV.**

For the foregoing reasons, the District Court's conclusion that the plaintiffs lacked standing to bring their claims under § 1132(a)(2) is REVERSED.