RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0156p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

HOWARD T. LINDEN, as Personal Representative of the
Estate of Timesha Beauchamp,

*Plaintiff-Appellant*,

*v.*

CITY OF SOUTHFIELD, MICHIGAN; MICHAEL STORMS,
SCOTT RICKARD, PHILLIP MULLIGAN, and JAKE KROLL,
in their individual capacities, jointly and severally,

*Defendants-Appellees*.

No. 22-1681

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:20-cv-12738—Nancy G. Edmunds, District Judge.

Argued:  June 15, 2023

Decided and Filed:  July 26, 2023

Before:  GIBBONS, LARSEN, and MURPHY, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:**  Robert G. Kamenec, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.,
Southfield, Michigan, for Appellant.  Kali M. L. Henderson, SEWARD HENDERSON PLLC,
Royal Oak, Michigan, for Appellees.  **ON BRIEF:**  Robert G. Kamenec, FIEGER, FIEGER,
KENNEY & HARRINGTON, P.C., Southfield, Michigan, for Appellant.  Kali M. L. Henderson,
T. Joseph Seward, SEWARD HENDERSON PLLC, Royal Oak, Michigan, for Appellees.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.  Emergency medical personnel in Southfield, Michigan, pronounced Timesha Beauchamp dead when she was still alive.  Beauchamp was placed in a body bag and transported to a funeral home, where an embalmer discovered that she was not dead.  Beauchamp was hospitalized and died about six weeks later.  Howard Linden, the administrator of Beauchamp's estate, sues the City of Southfield (the "City") and individual emergency medical personnel for their actions, which he says violated Beauchamp's constitutional rights.  The district court found that Linden failed to plead a constitutional violation and accordingly granted the defendants-appellees' motion to dismiss Beauchamp's claims.  Because the individual defendants-appellees in this case are entitled to qualified immunity, and because the City is not liable for any constitutional violation, we affirm the district court on alternative grounds.

I.

Timesha Beauchamp had cerebral palsy.  One morning her mother, Erica Lattimore, went into her room to give her a daily dose of medication.  Lattimore noticed that Beauchamp was not fully responsive and first attempted to give her oxygen.  When that failed to improve her condition, Lattimore called 911.  Lattimore also called Beauchamp's godmother, who in turn called her own mother, both of whom came to Lattimore's home.

Minutes later, the four emergency medical personnel who are defendants-appellees in this case—Michael Storms, Scott Rickard, Phillip Mulligan, and Jake Kroll (collectively the "First Responders")—arrived.  Mulligan and Kroll attempted CPR and ventilation using a bag valve mask.  After about half an hour, the First Responders discontinued efforts to resuscitate Beauchamp and declared her dead.  They also called a doctor to obtain permission to stop trying to resuscitate Beauchamp, although they had already stopped resuscitative efforts more than five minutes before receiving such permission.

However, numerous medical indicators still showed that Beauchamp was not dead—her capnography indicated continued respiration, her cardiac monitor showed electrical activity, and her breathing and pulse were perceptible to her family members.  Beauchamp's family members informed the First Responders of their observations suggesting that Beauchamp was still alive.

In response, Storms and Kroll took another look at Beauchamp.  The medical device they used continued to show organized electrical activity suggesting that Beauchamp was alive.  Nevertheless, Storms and Kroll stuck to their conclusion that Beauchamp was dead, explaining the signs of life as reactions to medication.  As the First Responders were leaving, City police officers, whom the First Responders had called once they concluded Beauchamp was dead, informed the First Responders that the family had seen Beauchamp gasp for air.  So the First Responders returned a third time, repeated their explanation that Beauchamp's chest movement was a result of medication, and continued to insist that Beauchamp was dead.

A City police officer called the Oakland County Medical Examiner to inform them of Beauchamp's death.  The officer instructed Lattimore to call a funeral home to pick up Beauchamp's body.  Lattimore called the James H. Cole Funeral Home (the "Funeral Home").  A Funeral Home employee who arrived to take Beauchamp's body asked Lattimore whether Beauchamp really was dead, as her chest was still visibly moving.  Lattimore relayed the First Responders' explanation that Beauchamp's chest would still move due to medication but that Beauchamp was in fact dead.  The employee wrapped Beauchamp in a sheet, placed her into a body bag, and removed Beauchamp from the home.

About fifteen minutes later, the body bag containing Beauchamp arrived at the Funeral Home, and the embalmer unzipped it.  The embalmer saw Beauchamp gasping for air with her eyes open and her chest moving up and down.  The embalmer called 911, and emergency medical personnel (not the First Responders) took Beauchamp to the hospital.  At the hospital, doctors determined that Beauchamp was alive but had suffered an anoxic brain injury.  Beauchamp remained on a ventilator in a vegetative state until she died about six weeks later.

On behalf of Beauchamp's estate, Linden sued the City and the First Responders pursuant to 42 U.S.C. § 1983 for violating Beauchamp's Fourteenth Amendment substantive due process

rights by being deliberately indifferent to her serious medical need. Linden later added a claim against the First Responders for gross negligence and wanton or willful misconduct under Michigan law.

The City and First Responders filed a joint motion to dismiss the operative Second Amended Complaint. They argued that Linden's constitutional claims should be dismissed because he failed to plead a violation of Beauchamp's constitutional rights, the First Responders were entitled to qualified immunity, and Linden's factual allegations did not support municipal liability. In response, Linden moved to amend his complaint again to assert that his factual allegations would support a substantive due process claim based on a state-created danger.

The district court held that Linden's allegations did not state a substantive due process claim. The district court therefore granted the defendants-appellees' motion to dismiss the constitutional claims on the merits and declined to exercise supplemental jurisdiction over the state law claims. The district court also adopted the magistrate judge's report that recommended denying Linden leave to further amend his complaint. Linden timely appealed.

II.

We review a grant of a motion to dismiss de novo. *Lipman v. Budish*, 974 F.3d 726, 740 (6th Cir. 2020). A motion to dismiss is properly granted if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). We construe the complaint in the light most favorable to the plaintiff, accepting its factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Royal Truck & Trailer Sales and Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020). However, we do not accept "conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011)).

We review a denial of leave to amend a complaint for abuse of discretion, but we review de novo the legal conclusion that amendment would be futile because a proposed amended complaint fails to state a claim. *See Pulte Homes, Inc. v. Laborers' Int'l Union*, 648 F.3d 295, 304-05 (6th Cir. 2011).

III.

Generally, there is no constitutional right to adequate medical care for individuals who are not in the custody of the state. *See Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005) ("It is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need." (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989))). However, there is an exception to that general principle where a state actor's "affirmative act" either "creates or increases a risk that the decedent would be exposed to 'private acts of violence,'" *id.* at 591 (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)), or "'cut[s] off' private sources of rescue without providing an adequate alternative[,]" *id.* (quoting *Beck v. Haik*, 377 F.3d 624, 643 (6th Cir. 2004), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc)). Linden argues that the Second Amended Complaint states a claim against the First Responders under both avenues. The First Responders argue that they are entitled to qualified immunity.

Qualified immunity "shields governmental officials from monetary damages as long as 'their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 480 (6th Cir. 2017) (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). We may address in either order whether a constitutional violation occurred and whether the right at issue was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The "inquiry" as to whether officials' conduct violated "clearly established" law "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Although "a case directly on point" is not necessary to overcome qualified immunity, "existing precedent must have placed the … constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Unlike other affirmative defenses, a plaintiff bears the burden to overcome qualified immunity. *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021).

Linden seeks to overcome qualified immunity based on two different substantive due process theories. First, Linden relies on a state-created danger theory. To state a constitutional claim on this theory, Linden must allege: "(1) an affirmative act by the [First Responders] that

create[d] or increase[d] a risk that [Beauchamp] would be exposed to private acts of violence, (2) a special danger to [Beauchamp] such that the [First Responders'] acts placed [Beauchamp] specifically at risk, as distinguished from a risk that affects the public at large," *Jackson*, 429 F.3d at 591 (internal quotation marks and citation omitted), and (3) that the First Responders "acted with the requisite culpability to establish a substantive due process violation." *Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 932 (6th Cir. 2020) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002)). The underlying constitutional question in this case turns largely on whether the First Responders' conduct exposed Beauchamp to a private act of violence. *Cf. Peete v. Metro. Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217, 223 (6th Cir. 2007) (state-created danger theory unavailable where state actors' incompetent medical care did not expose decedent to private act of violence).

Linden argues that the First Responders' affirmative acts of repeatedly insisting that Beauchamp was dead caused Beauchamp to suffer a private act of violence when a Funeral Home employee began processing her presumed-dead body for routine funeral preparations, including putting her into a body bag and transporting her to the Funeral Home. We have addressed a substantive due process claim based on emergency personnel's erroneous determination that someone was dead only once, in our unpublished decision in *Willis v. Charter Twp. of Emmett*, 360 F. App'x 596 (6th Cir. 2010). In *Willis*, first responders assumed that the driver of a pickup truck that had landed upside down in the middle of the highway after an accident was dead because he did not have a detectable pulse in his arm, even though a witness may have told them the driver was still breathing. *Id.* at 598. Paramedics did not offer the driver aid based on the firefighters' instruction that the driver was dead. *Id.* Instead, they placed a sheet over the cab of the pickup, which was eventually attached to a tow truck so that the driver's body could be removed. *Id.* at 598-99. At that point, someone noticed that the driver was still breathing, and he was immediately taken to the hospital, where he died shortly afterward. *Id.* at 599. We held that these facts did not support a constitutional claim based on a state-created danger because the firefighters "did not affirmatively act to expose [the driver] to private acts of violence." *Id.* at 601. In doing so, we rejected the argument that "the extended period of time during which [the driver] was left untreated and the jostling of the cab of his pickup when it was secured for towing" "amount to private acts of violence." *Id.*

Although we are not bound by *Willis*, we find it persuasive at least insofar as it suggests that the constitutional question in this case is not "beyond debate." *Al-Kidd*, 563 U.S. at 741. Considering similar facts under the same legal theory as Linden advances here, a unanimous panel of this court squarely concluded that there was no constitutional violation. *Willis*, 360 F. App'x at 601-03. *Willis* held that leaving an injured driver untreated based on the mistaken belief that the driver was dead, which in turn led to the "jostling" of the pickup truck to secure it for towing so that responders could extricate the presumed-dead body from the wreckage, was insufficient to state a claim under the state-created danger doctrine because the decedent was not exposed to a private act of violence. *See id.* at 601. So it is hard to see how it could be "clearly established" that the First Responders exposed Beauchamp to a private act of violence when they mistakenly believed she was dead and left her in her family's care to be processed for routine funeral proceedings, which included the Funeral Home employee's act of putting Beauchamp's presumed-dead body into a body bag to transport her to a funeral home. *Sumpter*, 868 F.3d at 480.

To be sure, Linden identifies a potential distinction between this case and *Willis*—the Funeral Home employee in this case was a private actor, whereas Linden says there was no private action in *Willis* at all. But *Willis* does not say whether the person who secured the pickup truck to the tow truck worked for a government or for a private entity, nor does the decision rely on that consideration when concluding that the "jostling" of the pickup truck did not amount to a private act of violence. 360 F. App'x at 601. And for qualified immunity purposes, any lack of clarity in *Willis* would only support the First Responders' position that Linden has failed to identify a "clearly established" right. *Sumpter*, 868 F.3d at 480.

In any event, it is Linden, not the First Responders, who bears the burden of pointing to legal authority that clearly shows that the constitutional question in this case should be resolved in his favor. *Crawford*, 15 F.4th at 760. To meet this burden, Linden argues that the viability of a state-created danger theory was clearly established at the time of the First Responders' conduct in this case. But that argument establishes only the "broad general proposition" that a state-created danger theory can sometimes be viable, not how the theory applies "in light of the specific context of [this] case." *Clemente*, 679 F.3d at 490 (citation omitted). Reviewing those

cases in which we have upheld a constitutional claim based on a state-created danger theory reveals that all dealt with situations far afield from this one. For example, a city that released information about its undercover officers that drug dealers could use to identify those officers substantially increased the risk that the drug dealers would commit acts of violence against them. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998). A county police officer who disclosed an informant's identity to drug dealers against whom she was informing increased the risk that the drug dealers would abduct and murder the informant. *Nelson v. City of Madison Heights*, 845 F.3d 695, 703 (6th Cir. 2017). And by interviewing a child about her abuse in front of her abusers, social workers increased the child's risk of further abuse. *Lipman*, 974 F.3d at 743-46. None of these cases clearly establish that the First Responders exposed Beauchamp to a private act of violence by creating or increasing the risk that a Funeral Home employee would begin processing her presumed-dead body for funeral proceedings, including putting her into a body bag and transporting her to the Funeral Home. And as discussed above, *Willis* leaves room for doubt about that proposition. Accordingly, Linden cannot overcome qualified immunity with respect to his state-created danger theory.

Second, Linden relies on an unpublished case in which we held that a substantive due process claim might be available to a § 1983 plaintiff who was not in the state's custody because the state cut off private sources of rescue. *See Beck v. Haik*, 234 F.3d 1267 (Table), 2000 WL 1597942, at *3-4 (6th Cir. Oct. 17, 2000). In *Beck*, a private team of divers stood ready to rescue the decedent, who was drowning, but law enforcement officers forbade them from entering the water pending the arrival of a county rescue team, which arrived too late to save the decedent. *Id.* at *1. Relying on the Seventh Circuit's decision addressing similar facts in *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990), we held that such a "policy of arbitrarily cutting off private sources of rescue without providing a meaningful alternative" could support a substantive due process claim. *Id.* at *4 (quoting *Ross*, 910 F.2d at 1431).

Unpublished cases cannot clearly establish law for purposes of qualified immunity. *See Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022). Moreover, this case is readily distinguishable from *Beck*, in which a state actor commanded potential private rescuers not to render aid. 2000 WL 1597942, at *1. That mattered because it meant that "the state" may have

"arbitrarily assert[ed] its power so as to cut short a person's life." *Id.* at *4 (citation omitted). Here, by contrast, the First Responders did not prohibit any private party from seeking or rendering aid. Indeed, no qualified private rescuer was present to offer aid, a circumstance based on which several of our cases have distinguished *Beck* and found no constitutional violation. *See Willis*, 360 F. App'x at *7 ("Further, because everyone at the scene was under the impression that [the plaintiff's decedent] was dead, no private rescue attempts were made."); *Tanner v. County of Lewanee*, 452 F.3d 472, 481 (6th Cir. 2006) ("Here, there was no comparable private rescuer on hand who was prevented from entering the house to aid Kirk."); *Pierce v. Springfield Township*, 562 F. App'x 431, 439 (6th Cir. 2014) ("Even construing the facts in the light most favorable to [the plaintiff], it is undisputed that neither [potential rescuer] informed the officers of any ability on their part to render medical aid."); *Hermann v. Cook*, 114 F. App'x 162, 166 (6th Cir. 2004) ("Here, … the officers knew nothing of [the potential private rescuer's] purported qualifications."). At the very least, then, Linden cannot show that it is "beyond debate" that the principle *Beck* relied upon extends to circumstances like those of this case. *Al-Kidd*, 563 U.S. at 741.

For these reasons, neither of Linden's theories of constitutional liability overcomes the First Responders' defense of qualified immunity. We therefore affirm the district court's grant of summary judgment to the First Responders as to Linden's constitutional claims on the alternative ground of qualified immunity, without deciding whether the First Responders' conduct violated Beauchamp's constitutional rights.

IV.

To state a claim against a municipality pursuant to § 1983, a plaintiff must plausibly allege that her constitutional rights were violated and that the municipality had a "policy or custom" that caused the violation. *Wright v. City of Euclid*, 962 F.3d 852, 879-80 (6th Cir. 2020). The policy or custom can be "an illegal official policy or legislative enactment," ratification of "illegal actions" by "an official with final decision making authority," a "policy of inadequate training or supervision," or "a custom of tolerance or acquiescence of federal rights violations." *Id.* (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019)).

To establish a policy or custom, Linden relies only on the City's alleged failure to train its First Responders to take patients to the hospital in emergencies and obtain permission before ceasing resuscitative efforts. A municipality's failure to train its employees will support a *Monell* claim only if it represents "deliberate indifference" to the constitutional rights of "persons with whom [they] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Failure to train can constitute deliberate indifference if "the municipality has failed to act 'in response to repeated complaints of constitutional violations by its officers.'" *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020) (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003)). Even absent other incidents, however, the municipality can still be liable in a "narrow range of circumstances" where the need for more training was "obvious." *Id.* (first quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 379, 409 (1997); then quoting *Canton*, 489 U.S. at 390).

While the Second Amended Complaint asserts that the City provided the First Responders with inadequate training, it marshals no facts to support this bare conclusion. For example, the Second Amended Complaint does not contain any factual allegations about the content or extent of training that the First Responders received. The Second Amended Complaint also does not allege other similar incidents that would have put the City on notice of a need for more training. Finally, its factual allegations do not give rise to a plausible inference that the need for training to avoid incidents like what happened to Beauchamp was so "obvious" that any failure to provide such training would have amounted to deliberate indifference. *Ouza*, 969 F.3d at 287. If anything, the fact that numerous laypersons recognized signs that Beauchamp was still alive suggests that the City could reasonably have expected the First Responders not to pronounce Beauchamp dead without special training on the topic. In the same vein, the obvious signs of life Beauchamp displayed also undermine the inference that the First Responders would have acted differently had they received more or different training from the City. *See Wright*, 962 F.3d at 880 (municipal policy or custom must be "moving force" behind constitutional violation).

We therefore affirm the district court's dismissal of Linden's claims against the City on the alternative ground that Linden failed to plead the elements of *Monell* liability, again without deciding whether the First Responders' conduct violated Beauchamp's constitutional rights.

V.

Finally, Linden argues that the district court erred in denying him leave to file his Third Amended Complaint. As Linden acknowledges, though, his proposed Third Amended Complaint largely reproduces the factual allegations in the Second Amended Complaint. The differences between the Second Amended Complaint and the Third Amended Complaint are primarily organizational, with the Third Amended Complaint including a separate section specifically referencing a state-created danger claim and reciting legal conclusions in support. Because the mere inclusion of these legal conclusions in the proposed amended complaint would not affect our analysis, *see Bickerstaff*, 830 F.3d at 396, the Third Amended Complaint would be subject to dismissal for the same reasons discussed above: the First Responders are entitled to qualified immunity, and the City is not liable for any constitutional violation. We therefore affirm the district court's denial of further leave to amend.

VI.

We affirm.