RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0135p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

TIARA YACHTS, INC.,

        *Plaintiff-Appellant*,

    *v*.

BLUE CROSS BLUE SHIELD OF MICHIGAN,

        *Defendant-Appellee*.

No. 24-1223

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:22-cv-00603—Robert J. Jonker, District Judge.

Argued: February 6, 2025

Decided and Filed: May 21, 2025

Before: MURPHY, DAVIS, and BLOOMEKATZ, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Aaron M. Phelps, VARNUM LLP, Grand Rapids, Michigan, for Appellant. Tacy F. Flint, SIDLEY AUSTIN LLP, Chicago, Illinois, for Appellee. **ON BRIEF:** Aaron M. Phelps, Perrin Rynders, Herman D. Hofman, Neil E. Youngdahl, VARNUM LLP, Grand Rapids, Michigan, for Appellant. Tacy F. Flint, H. Javier Kordi, SIDLEY AUSTIN LLP, Chicago, Illinois, for Appellee.

───────────────

## OPINION

───────────────

BLOOMEKATZ, Circuit Judge. Tiara Yachts, Inc., hired Blue Cross Blue Shield of Michigan ("BCBSM") to administer its self-funded healthcare benefits plan. It alleges that BCBSM knowingly squandered plan assets by systematically overpaying some categories of

claims. BCBSM then allegedly profited from its mismanagement by implementing a program through which it caught overpayments, clawed them back, and kept a portion of those "savings" for itself.

Tiara Yachts sued BCBSM under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and BCBSM moved to dismiss. The district court granted that motion, holding that Tiara Yachts hadn't plausibly alleged that BCBSM acted as an ERISA fiduciary. It also held that ERISA's remedial provisions couldn't provide the relief Tiara Yachts sought. Because the district court erred on both fronts, we reverse.

## BACKGROUND[1]

### I.     The Administrative Services Contract

Tiara Yachts is a Michigan corporation that designs and manufactures boats. It offers its employees health insurance through a self-funded benefits plan ("the Plan"). So rather than buying health insurance from another company, Tiara Yachts pays a portion of its employees' actual medical costs according to the Plan's terms.

In January 2006, Tiara Yachts hired BCBSM to administer the Plan. An Administrative Services Contract ("ASC") governed their relationship. Under that contract, BCBSM was responsible for interpreting the Plan's terms, calculating benefits, deciding whether to grant or deny claims on Tiara Yachts' behalf, and ultimately paying providers. In exchange, Tiara Yachts paid BCBSM a monthly fee and periodically deposited money into a BCBSM-owned account, from which BCBSM paid claims. That meant BCBSM decided what claims to pay and for how much, then wrote checks to medical providers out of the Plan's assets.

The ASC granted Tiara Yachts some ways to oversee BCBSM's management of the Plan. For example, the contract allowed Tiara Yachts to dispute any claim BCBSM paid within sixty days. It also allowed Tiara Yachts to request an audit of claims from the preceding twenty-four months.

---

[1]We accept Tiara Yachts' factual allegations as true and draw all reasonable inferences in its favor, as we must at this stage. *Linden v. City of Southfield*, 75 F.4th 597, 601 (6th Cir. 2023).

Tiara Yachts renewed the ASC annually until December 2018, when it terminated its relationship with BCBSM.

## II.    **"Flip Logic" and Overpaying Claims**

Tiara Yachts alleges that BCBSM systematically overpaid claims submitted by medical providers during the years that BCBSM administered the Plan. Understanding Tiara Yachts' allegations requires some background. BCBSM is just one of thirty-eight Blue Cross Blue Shield Association regional affiliates—colloquially known as the "Blues." Each of the Blues negotiates with providers in its area to set rates for medical services. Although the Blues operate independently, they process claims and reimbursements through a central electronic system. And the Blues have a policy that allows individuals enrolled in one Blue's plan to receive the benefit of another "Host Blue's" pricing if they need out-of-state medical care. In that scenario, the insuring Blue reimburses the out-of-state medical provider at the rate the Host Blue would pay. When contracting with BCBSM, Tiara Yachts secured this benefit for its Plan's participants. Thus, for example, when a covered Tiara Yachts employee received care in another state—say, Tennessee—BCBSM promised Tiara Yachts that it would reimburse the provider at whatever rate Tennessee's Blue would pay.

But that is not what happened. Instead, BCBSM processed claims using an "intentional design" called "flip logic." Compl., R. 1, PageID 7. How did it work? When an out-of-state provider who wasn't part of the Host Blue's network submitted a claim, BCBSM would "flip" its status and reimburse the provider however much it charged rather than at the Host Blue's lower rate.[2] As a result, BCBSM reimbursed "many times over and above the customary amount for such services." *Id.* at PageID 8. BCBSM implemented flip logic in 1997, long before Tiara Yachts hired it to administer the Plan.

According to internal emails between BCBSM employees, flip logic affected "all" customers on one of BCBSM's claims-processing platforms except those purchasing auto insurance. *See* Sept. 14 Email Chain, R. 1-2, PageID 27. Though the emails do not name any

---

[2]The exact mechanics of "flip logic" are not necessary to analyzing Tiara Yachts' claims. At bottom, Tiara Yachts alleges that flip logic caused BCBSM to overpay on claims from certain out-of-state providers.

customers, Tiara Yachts was a customer on that platform and did not purchase auto insurance. By 2017, BCBSM knew that flip logic allowed "abusive provider practices" that resulted in reimbursements "far exceed[ing]" the "allowed amount." *See id.* Despite that knowledge, BCBSM didn't implement "controls in the system logic that would flag suspicious claim activity." Compl., R. 1, PageID 8.

The issues with BCBSM's claims processing extended beyond flip logic. The platform BCBSM used to manage claims for all similarly situated customers, including Tiara Yachts, allegedly suffered from "processing errors" that allowed providers to improperly code for their services and overbill the Plan, which "consistently result[ed] in improper payments of claims." *Id.* at PageID 15–16. Tiara Yachts does not cite specific claims that BCBSM overpaid from Plan assets. But that's because, Tiara Yachts says, BCBSM concealed flip logic from its customers and limited access to claims data and explanatory documents.

### III.    Shared Savings Plan

Tiara Yachts further alleges that BCBSM implemented a program to profit from its practice of overpaying claims. Starting in January 2018, BCBSM enrolled all self-funded customers, including Tiara Yachts, in a new "Shared Savings Program" ("SSP"). Under that program, among other things, BCBSM hired third parties to claw back past overpayments from providers and to detect and prevent future overpayments before they occurred. In exchange for those services, BCBSM kept 30% of the payments third parties either recovered or prevented.

### IV.    Procedural History

Tiara Yachts sued BCBSM, claiming that it had breached its fiduciary duties under ERISA by, among other things, overpaying claims based on flip logic and implementing the SSP. Tiara Yachts also alleged that BCBSM had violated ERISA's strictures on self-dealing by using the SSP to profit off its own mismanagement of Plan assets. Tiara Yachts sought damages, restitution, disgorgement, and a declaratory judgment that BCBSM had breached its fiduciary duties under ERISA.

BCBSM moved to dismiss for failure to state a claim, and the district court granted that motion. It held that Tiara Yachts had not plausibly alleged that BCBSM acted as an ERISA fiduciary, either when paying providers based on flip logic or when paying itself through the SSP. The district court also determined that ERISA could not provide the relief Tiara Yachts requested.

Tiara Yachts timely appealed.

## ANALYSIS

We review a grant of a motion to dismiss de novo. *Linden v. City of Southfield*, 75 F.4th 597, 601 (6th Cir. 2023). Accepting the complaint's "factual allegations as true and drawing all reasonable inferences in the plaintiff's favor," *id.*, we ask whether it "contains sufficient factual matter to state a claim to relief that is plausible on its face," *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020) (cleaned up).

## I.     ERISA Fiduciary Status

Tiara Yachts brings two ERISA claims against BCBSM: one for breaching its fiduciary duties, and one for engaging in transactions prohibited by the statute. For both claims, Tiara Yachts must first plausibly allege that BCBSM was a "fiduciary with respect to" the Plan when it engaged in the complained-of conduct. *See* 29 U.S.C. §§ 1106(b), 1109(a); *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 746, 748 (6th Cir. 2010). The district court held that Tiara Yachts failed to meet this threshold element of its ERISA claims, so the court did not address the other elements. BCBSM defends the court's dismissal of Tiara Yachts' claims on this threshold element only.[3] Accordingly, we focus our analysis on whether BCBSM acted as an ERISA fiduciary for Tiara Yachts' Plan when it allegedly overpaid claims and compensated itself through the SSP.

---

[3]Although BCBSM briefed the other elements of Tiara Yachts' claims before the district court, its appellate brief focuses solely on whether it acted as an ERISA fiduciary when taking the actions alleged. As a result, BCBSM has abandoned any challenge to the other elements of Tiara Yachts' ERISA claims, and we do not address them here. *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998) (order).

The statutory text tells us that a person or entity can become an ERISA fiduciary by "performing at least one of several enumerated functions with respect to a plan." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 18 (1st Cir. 1988). Relevant here, a party is an ERISA fiduciary when it exercises either (1) any authority or control over plan assets; or (2) discretionary authority over plan management or administration. *See Briscoe v. Fine*, 444 F.3d 478, 488 (6th Cir. 2006); 29 U.S.C. § 1002(21)(A) (stating that an entity is a plan's fiduciary to the extent that it "exercises any discretionary authority or discretionary control respecting management of such plan," "any authority or control respecting management or disposition of its assets," or "any discretionary authority or discretionary responsibility in the administration of such plan").

ERISA fiduciary status "is not an all or nothing concept." *Briscoe*, 444 F.3d at 486 (citation omitted). Instead, we take a functional approach to ERISA fiduciary analysis, *see Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993), and ask whether BCBSM "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint," *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Tiara Yachts alleges BCBSM violated ERISA by both overpaying claims (including through flip logic) and compensating itself for recovering those overpayments through the SSP. So we ask if each of those actions involved either control over plan assets or discretionary authority over plan management or administration, which would confer fiduciary status on BCBSM for Tiara Yachts' allegations in this case.

### A.    Overpaying Claims (Flip Logic and Claims-Processing Errors)

We first consider whether Tiara Yachts plausibly alleged that BCBSM acted as an ERISA fiduciary when overpaying providers based on flip logic and other claims-processing errors. "[A]n entity that exercises *any* authority or control over disposition of a plan's assets becomes a fiduciary" as to those actions. *See Pipefitters Loc. 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 867 (6th Cir. 2013) (*Pipefitters IV*) (citation omitted). Every circuit to address the issue has held that "'*discretionary*' control or authority" over plan assets is not required to give rise to ERISA fiduciary status. *See Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 66 F.4th 307, 324 (1st Cir. 2023) (emphasis added)

(collecting cases). "[A]ny" authority or control will do. *Briscoe*, 444 F.3d at 488. Accordingly, "failing to preserve assets" gives rise to fiduciary duties. *See Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*, 32 F.4th 548, 563 (6th Cir. 2022) (*SCIT*) (cleaned up).

That's just what Tiara Yachts alleges BCBSM did here. BCBSM "had the authority to write checks on the Plan account" and exercised "control over where Plan funds were deposited and how and when they were disbursed." *Guyan Int'l, Inc. v. Pro. Benefits Adm'rs, Inc.*, 689 F.3d 793, 798 (6th Cir. 2012). It wrote those checks to medical providers based on its own claims-processing procedures, including flip logic. Tiara Yachts alleges that through flip logic, BCBSM knowingly squandered Plan assets by reimbursing certain out-of-state providers at charge rather than at the Host Blues' lower rates. Although Tiara Yachts does not refer to specific claims BCBSM overpaid through flip logic, it cites internal BCBSM emails that say flip logic affected an entire group of its customers to which Tiara Yachts belonged. That's enough to plausibly allege that BCBSM acted as a fiduciary when it controlled—and then "fail[ed] to preserve"—Plan assets. *See SCIT*, 32 F.4th at 564.

The district court held that Tiara Yachts' allegations about flip logic and claims-processing issues "are fully matters of contract," so they are not actionable under ERISA. Order, R. 23, PageID 474–75. But contractual duties and ERISA fiduciary status are not mutually exclusive. *See, e.g.*, *Guyan*, 689 F.3d at 796, 798; *Pipefitters IV*, 722 F.3d at 867; *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*, 751 F.3d 740, 744–45 (6th Cir. 2014). Administrators of ERISA plans often operate under contract. And a plaintiff's allegation that its administrator breached a contractual term does not remove its claim from ERISA's ambit. Rather, an administrator's performance (or nonperformance) of its contractual obligations can illuminate whether it was acting as an ERISA fiduciary. In *Guyan*, for example, the plaintiffs alleged that their third-party administrator broke its contractual promises by comingling plan funds and using them for its own purposes. 689 F.3d at 796. We held that the administrator's use of "Plan funds in ways contrary to how it had agreed to use them" showed it had authority and control over plan assets, which meant it had acted as an ERISA fiduciary while breaching the contract. *Id.* at 798. The same goes here. Tiara Yachts alleges BCBSM violated the ASC by overpaying providers, which supports Tiara Yachts' contention that BCBSM exerted authority

and control over plan assets. Indeed, to hold that an administrator like BCBSM insulates itself from ERISA liability because a contract governs its relationship with its customer would "gut ERISA's fiduciary provisions." Sec'y of Lab. Amicus Br. at 25.[4]

The district court also held that BCBSM's alleged practice of systematically overpaying providers did not give rise to ERISA fiduciary status because it constituted a "system-wide business decision[]" rather than any action specific to the Plan. Order, R. 23, PageID 476. It cited our decision in *DeLuca v. Blue Cross Blue Shield of Michigan* for the idea that "business dealings" that are "generally applicable to a broad range of health-care consumers" and not "directly associated with the benefits plan at issue" do not give rise to ERISA fiduciary duties. *Id.* at PageID 475 (quoting *DeLuca*, 628 F.3d at 747). Because Tiara Yachts alleged that flip logic and other claims-processing issues affected many customers rather than just itself, the district court held that Tiara Yachts challenged a "business decision" outside ERISA's scope. *Id.* at PageID 476.

As an initial matter, we highlight that such reasoning would yield untenable results. If the inquiry were to focus solely on whether the action is "system-wide," an administrator that squandered the assets from every plan it managed would be immune from ERISA claims because its error was a business decision for a group of plans, while one that overpaid from only a single plan would face liability. We do not read ERISA to categorically immunize conduct that affects many plans rather than just a few.

*DeLuca* does not hold otherwise. There, we acknowledged that BCBSM was acting in two capacities: one, as a distributor of healthcare services, and two, as a third-party administrator of ERISA plans. *DeLuca*, 628 F.3d at 746–47. The dispute was about actions BCBSM took solely in the former capacity. The plaintiff alleged that while negotiating with providers, BCBSM agreed to increase rates for two buckets of plans (which included his employer's) in exchange for decreasing rates for a third. *Id.* at 746. We held that negotiating rates "generally

---

[4]The ASC itself states that ERISA will govern the Plan. That language may not be dispositive. But it certainly indicates that, contrary to the district court's holding, BCBSM could breach its ERISA fiduciary duties by violating the ASC's terms. *See Hi-Lex*, 751 F.3d at 746 (rejecting a plan administrator's "attempts to characterize its arrangement" with the plaintiff as simply "a service agreement between two companies" because parties' contract referred to their rights and obligations under ERISA).

applicable to a broad range of health-care consumers" did not constitute "management" or "administration" of the plan, so it did not give rise to fiduciary status.  *Id.* at 747 (citation omitted).  We also observed that the complaint did not allege BCBSM had "squandered plan assets under its authority or control" or had otherwise breached ERISA fiduciary duties in its role as a third-party administrator.  *Id.* at 747–48. In fact, the parties did not dispute that BCBSM "acted as a fiduciary" while processing claims, which involved "making discretionary eligibility determinations."  *Id.* at 746.  But BCBSM's actions in that capacity weren't at issue in *DeLuca*. Here, they are. Tiara Yachts' complaint focuses on BCBSM's wasting Plan assets in its role "making discretionary eligibility determinations" and paying out claims, not on any actions it took as a "distributor of health-care services."  *Id.* at 747. *DeLuca* simply did not address the issue this case presents.[5]

BCBSM further argues that the First Circuit rejected "virtually identical" claims to Tiara Yachts' in *Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Massachusetts*, 66 F.4th 307 (1st Cir. 2023), but its reliance on that case is misplaced. Appellee's Br. at 28–29.  True, as in this case, the plaintiff there sued its plan's third-party administrator under ERISA for "pa[ying] providers in amounts exceeding the negotiated rates." *Mass. Laborers*, 66 F.4th at 310.  But the arrangement between the plan and its third-party administrator did not resemble the one between Tiara Yachts and BCBSM under the ASC.  Most critically, the administrator there lacked the "final authority" to approve claims. *Id.* at 319–20. In *Massachusetts Laborers*, the administrator would reprice claims according to the contract, but then the plan would determine claimant eligibility, adjudicate the claims, and provide final approval. *Id.* at 320.  Although the administrator wrote the final check, that was a "mechanical administrative task[]" that the First Circuit reasoned was "insufficient to confer fiduciary status," *id.* at 325 (citation omitted), because the administrator "lacked meaningful control over remitting

---

[5]BCBSM cites four more cases purportedly holding "that an entity's broader decisions do not give rise to ERISA fiduciary status."  Appellee's Br. at 40 n.7.  None are analogous. *Holderman v. Devine*, 474 F.3d 770, 778–80 (10th Cir. 2007), analyzed whether the defendant, who served both as his company's CEO and as a fiduciary of his employees' benefits plan, acted in his fiduciary capacity when he stopped funding the plan.  This case does not involve any similar allegations.  BCBSM also cites *Hunter v. Caliber System, Inc.*, 220 F.3d 702 (6th Cir. 2000), *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660 (6th Cir. 1998), and *Acosta v. Brain*, 910 F.3d 502 (9th Cir. 2018), which concerned whether *an employer*'s business decisions constituted fiduciary acts.  None of these cases provide insight on whether a third-party administrator's business-wide decision to waste plan assets qualifies as a fiduciary act.

claim payments," *id.* at 327 (quotations omitted).  In other words, the administrator "lacked authority respecting the disposition" of plan assets.  *Id.*  Not so here.  Tiara Yachts alleges that the ASC gave BCBSM the authority to grant or deny claims, and then to pay claims from Plan assets.  That suffices to show that BCBSM exercised "meaningful control" over disposing of Plan assets when it overpaid providers through flip logic and other claims-processing errors, and thus acted as an ERISA fiduciary.  *Id.*

Because Tiara Yachts has plausibly alleged that BCBSM controlled the disposition of Plan assets when it was overpaying claims to medical providers, it has plausibly demonstrated that BCBSM was acting as an ERISA fiduciary.[6]

## B.     The SSP

Next, we consider whether Tiara Yachts plausibly alleged that BCBSM acted as an ERISA fiduciary by compensating itself through the SSP.  But before examining the merits, we turn to the parties' dispute about the proper pleading standard.

### 1.     Heightened Pleading

BCBSM argues that Tiara Yachts' allegations about the SSP trigger Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements.  Ordinarily, a plaintiff's complaint needs to contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting Fed. R. Civ. P. 8(a)(2)).  But Rule 9(b) provides that if a plaintiff's claim sounds in fraud, they must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  When determining whether a claim sounds in fraud, we have looked to whether the complaint's allegations track the elements of common-law fraud.  *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012) (citing *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)).  Those elements are material misrepresentation or omission, knowledge of falsity, intent to defraud, reliance, and damages.  *See Caputo*, 267 F.3d at 191.  We have also held that a plaintiff's claim

---

[6]Because exercising "*any* authority or control" over plan assets is sufficient to make BCBSM a fiduciary with regard to Tiara Yachts' charge that it overpaid provider claims, *Guyan*, 689 F.3d at 798 (citing *Briscoe*, 444 F.3d at 490–91), we need not consider whether BCBSM also acted as a fiduciary by exercising "discretionary authority" over administering or managing the Plan when it overpaid providers' claims, *id.* at 797.

need not contain fraud as an element to "sound in fraud," but our cases otherwise leave open how close a connection there must be to common-law fraud. *See Kolominsky v. Root, Inc.*, 100 F.4th 675, 683 (6th Cir. 2024).

We need not resolve that issue here because Tiara Yachts' allegations about the SSP do not sound in fraud under any standard. Tiara Yachts claims BCBSM overpaid providers, failed to correct the claims-processing issues that led to that overpayment, and implemented a system to profit off its own mistakes. But the complaint does not, for instance, allege that BCBSM lied about how much it would pay itself under the SSP or concealed the claims it was overpaying in the first place. Rather, Tiara Yachts concedes that BCBSM was up front about collecting 30% of the savings from the SSP and allowed Tiara Yachts to challenge or audit claims. Nor does Tiara Yachts allege that it relied on any misrepresentations related to the SSP in continuing to do business with BCBSM.

Moreover, Tiara Yachts does not need to plead that BCBSM acted fraudulently here, as the elements of common law fraud do not overlap with elements of an ERISA self-dealing claim. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1027 (2025) (citing 29 U.S.C. § 1106(a)(1)(C)). ERISA treats self-dealing transactions as "presumptively unlawful," *id.*, no matter whether the plaintiff alleges the defendant acted "out of fraud or imprudence," *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 99 F.4th 928, 948 (7th Cir. 2024). Tellingly, BCBSM cites no decision from this court applying Rule 9(b) to an ERISA self-dealing claim. Our sister circuits likewise generally have not applied a heightened pleading standard to ERISA claims. *See Concha v. London*, 62 F.3d 1493, 1502–03 (9th Cir. 1995) (explaining why Rule 9(b) should apply "in fraud claims, but not in breach of fiduciary claims generally," and collecting circuit caselaw).

BCBSM's arguments to the contrary fall flat. *First*, it cites our decision in *Cataldo v. United States Steel Corp.* for the proposition that Rule 9(b) applies to Tiara Yachts' claim. *See* 676 F.3d at 551–52. But that case concerned whether the plaintiffs qualified for the "fraud or concealment" exception to ERISA's statute of limitations. *Id.* at 548–51. To qualify for that exception—unlike a self-dealing claim—the plaintiffs needed to adequately plead fraud. *Id.* Contrary to BCBSM's suggestion, *Cataldo* didn't impose any specific pleading standard on

breach of fiduciary duty claims under ERISA. *Second*, BCBSM asserts that the complaint sounds in fraud because it accuses BCBSM of "[m]isleading and deceiving Tiara Yachts by implementing a Shared Savings Plan when it knew Tiara Yachts' Plan assets were being used to overpay for benefits." Compl., R. 1, PageID 9. But a single reference to "misleading and deceiving" in the complaint's statutory counts does not transform Tiara Yachts' claim. The rest of its allegations about the SSP focus on BCBSM's self-dealing, not lying while doing so. Thus, Rule 9(b) does not apply to Tiara Yachts' claims about the SSP.

### 2.        Discretionary Authority over Plan Management or Administration

We turn now to whether Tiara Yachts has plausibly alleged that BCBSM acted as an ERISA fiduciary by exercising discretion over its compensation under the SSP. As explained above, a plaintiff can show that a defendant acted as an ERISA fiduciary by exercising discretionary authority over plan management or administration. *Briscoe*, 444 F.3d at 488 (citing 29 U.S.C. § 1002(21)(A)). To that end, if a contract grants a plan administrator discretion as to its compensation, using that discretion is a fiduciary act. *See Pipefitters IV*, 722 F.3d at 867; *Hi-Lex*, 751 F.3d at 744–45. But on the other hand, if a contract gives the administrator the unilateral right to a specific amount of compensation, exercising that right does not create fiduciary duties. *See Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003).[7]

Under the ASC's terms, BCBSM received a set percentage of the SSP's savings—30%. At first blush, this fixed term makes it seem like BCBSM had no discretion in how much it got paid for administering the SSP. But when we scratch below the surface, it's clear that BCBSM exercised discretion in setting its compensation for the SSP. That's because, when dealing with percentages, a critical question is, "percentage of what"? BCBSM received both 30% of future overpayments the SSP prevented the Plan from paying, and 30% of past overpayments the SSP

---

[7]We read *Seaway*, *Pipefitters IV*, and *Hi-Lex* as concerning whether an administrator acted as an ERISA fiduciary by exercising discretion over its own compensation. Admittedly, these decisions left some ambiguity as to whether they based their holdings on control over plan assets on the one hand, or discretionary authority over plan management or administration on the other. But as the First Circuit explained in *Massachusetts Laborers*, all three decisions are best understood as concerning the latter path to ERISA fiduciary status—discretionary authority over plan management or administration. 66 F.4th at 318–19.

clawed back from providers.  And, critically, BCBSM controlled the number and amount of overpayments the Plan made because under the ASC, BCBSM decided which claims to pay, determined how much to pay for them, and then wrote the checks.  In short, BCBSM's control over the claims-processing apparatus meant it also exercised discretion in setting its compensation under the SSP.  Here, Tiara Yachts alleges that the self-dealing was nefarious: BCBSM intentionally inflated the pool of overpayments from which it could profit.  The more overpayments BCBSM made on the front-end while processing claims, the more money it could receive on the back-end through the SSP.  Based on that, Tiara Yachts has plausibly alleged BCBSM exercised discretion as to its own compensation through the SSP, giving rise to fiduciary duties.  *See Pipefitters IV*, 722 F.3d at 867; *Hi-Lex*, 751 F.3d at 744–75.

In response, BCBSM asserts that the ASC allowed it to "retain a fixed percentage of specified amounts as compensation" for the SSP, so it exercised no discretion in how much it collected.  Appellee's Br. at 44.  As explained above, that's only partly true.  Although the ASC fixed the *percentage* fee BCBSM would charge for the SSP, the complaint alleges that BCBSM controlled its *total* compensation by exercising authority and discretion over claims processing, including the number and amounts of overpaid claims to which the fixed percentage fee would apply.  BCBSM cites *Seaway* for the proposition that its fixed percentage fee insulates it from ERISA fiduciary duties, but BCBSM's control over initial overpayments distinguishes this case from *Seaway*.  There, the parties' contract stated that certain discounts and payments from providers were "for the sole benefit" of the administrator, who would "retain any payments resulting therefrom."  *Seaway*, 347 F.3d at 616.  We held that the administrator didn't exercise discretion by retaining those payments because it lacked control over how much it would get paid, including "over factors that determine[d] the actual amount of its compensation"—the discounts and benefits providers chose to offer.  *Id.* at 619 (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)).  In contrast, Tiara Yachts alleges BCBSM exercised control over a key factor in its compensation: the total pool of overpayments from which the SSP could draw.  Rather than helping BCBSM, *Seaway* supports finding that BCBSM acted as an ERISA fiduciary here.

BCBSM next argues that we have only held an administrator exercised discretion over its compensation in a narrow set of circumstances, citing our decisions in *Pipefitters IV* and *Hi-Lex*. In those cases, we held that administrators had exercised discretion over compensation, as the contracts did not specify how much compensation the administrators could keep, and the administrators had not collected the same fees from all similarly situated customers. *Pipefitters IV*, 722 F.3d at 867; *Hi-Lex*, 751 F.3d at 744. According to BCBSM, because the ASC specified that it would collect 30% of savings, and because Tiara Yachts has not alleged BCBSM enforced that fee differently for other customers, it did not exercise "discretion" as defined by *Pipefitters IV* and *Hi-Lex*. But the facts of *Pipefitters IV* and *Hi-Lex* are so far from the allegations here that they are hard to compare. Moreover, neither case prevents us from considering other indicia of discretion here. As *Seaway* acknowledged, one way an administrator may exercise discretion over its compensation is by controlling "factors that determine[d] the actual amount of its compensation." 347 F.3d at 619 (quoting *F.H. Krear & Co.*, 810 F.2d at 1259). Tiara Yachts alleges BCBSM had the ability to approve inflated claims on the front-end to increase the SSP's recovery pool. In other words, the complaint alleges that BCBSM could control a key factor in its compensation, which is enough to trigger ERISA fiduciary duties at this pleading stage.

BCBSM also contends that there were "too many steps between the initial payment and the recovery" for its control over claims processing to amount to discretion over its compensation. Oral Arg. Rec. at 16:50. It argues that third parties—not BCBSM—identified and recovered overpayments through the SSP. It also asserts clawing back past overpayments turned on "providers' willingness . . . to return excessive claims payments," which was "outside BCBSM's control." Appellee's Br. at 47. In support of its theory that its compensation was too attenuated from its control over claims processing to create fiduciary duties, BCBSM cites *Central Valley Ag Cooperative v. Leonard*, 986 F.3d 1082 (8th Cir. 2021), and *Massachusetts Laborers*, 66 F.4th 307. In those cases, our sister circuits held that savings arrangements resembling the SSP didn't give rise to ERISA fiduciary duties. But neither precedent focused on the "number of steps" between claims processing and recovery, or on the role of third parties in identifying and recovering savings. Rather, both found critical that, at bottom, the defendant did *not* exercise discretionary control over the overpayments from which it could later collect.

That makes them inapposite here—at least at the pleading stage when we must accept Tiara Yachts' factual allegations as true.

Consider the reasoning from each case. In *Central Valley*, a self-funded healthcare plan hired a bill reviewer to analyze some of the plan's medical bills for "errors or excessive charges" and to recommend how much to pay providers. 986 F.3d at 1085. Then, the plan "decided whether to pay the recommended amount or a greater or lesser amount." *Id.* Per the parties' contract, if the plan ended up paying less than the charged amount, the reviewer collected 30% of the "savings." *Id.* The Eighth Circuit held that this arrangement didn't give rise to fiduciary duties because the plan retained the power to "approve" or "freely reject" the reviewer's recommendations, meaning the reviewer lacked discretion as to its compensation. *Id.* at 1087. According to the complaint, Tiara Yachts retained no similar control over BCBSM's benefits determinations and payments. *Massachusetts Laborers* is also inapt. *See* 66 F.4th 307. There, the parties' contract allowed the plan's administrator to collect a percentage fee for correcting overpayments "attributable to a third party" but not those attributable to itself. *Id.* at 313, 322. The First Circuit held that the recovery provision didn't allow discretion over compensation because it "clearly provided" that the administrator could recover only for overpayments other parties caused. *Id.* at 322. By contrast, the ASC here allegedly allowed BCBSM to retain savings from payments it erroneously approved. Again, rather than helping BCBSM, both *Central Valley* and *Massachusetts Laborers* reflect the principle that where an administrator can recover for overpayments it unilaterally caused or controlled, that constitutes discretion over compensation.

Therefore, Tiara Yachts has plausibly alleged that BCBSM acted as an ERISA fiduciary by exercising discretion over its own compensation for the SSP.[8]

---

[8]To establish BCBSM's fiduciary status regarding the SSP, Tiara Yachts alternatively argues that BCBSM exercised control over the disposition of plan assets via its compensation. Because we hold that BCBSM did exercise discretionary authority over plan management or administration, we do not have to rely on Tiara Yachts' alternative theory. But one could argue that by paying itself 30% of prevented overpayments and collecting that fee directly from Plan assets (rather than clawing funds back from providers), BCBSM exercised *"authority or control respecting management or disposition of [Plan] assets."* 29 U.S.C. § 1002(21)(A). We need not address that argument here.

## II.    Relief

Tiara Yachts also appeals the district court's alternative holding for dismissing its complaint—that ERISA does not provide the relief it seeks.  ERISA lays out "six carefully integrated civil enforcement provisions." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985).  Those provisions provide "distinct categories of relief for differing types of harm." *Patterson v. United Healthcare Ins. Co.*, 76 F.4th 487, 495 (6th Cir. 2023).  Two provisions are relevant here: 29 U.S.C. § 1132(a)(2), which allows certain parties to collect damages or "other equitable or remedial relief" on behalf of the plan, and 29 U.S.C. § 1132(a)(3), which provides only for "appropriate equitable relief." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); *see also* 29 U.S.C. § 1109.  The district court concluded that Tiara Yachts could not recover under either provision.  We disagree.[9]

### A.    Relief on Behalf of the Plan Under 29 U.S.C. § 1132(a)(2)

Section 1132(a)(2) provides that a plan's fiduciary can sue "for appropriate relief under section 1109." 29 U.S.C. § 1132(a)(2).  Section 1109, in turn, states that a person who violates ERISA fiduciary duties is "personally liable to make good *to such plan* any losses to the plan" from the breach, and "to restore *to such plan* any profits" resulting from the breach.  *See id.* § 1109(a) (emphasis added).  We have interpreted § 1109(a) as authorizing recovery only "to the plan." *See Kuper v. Iovenko*, 66 F.3d 1447, 1452–53 (6th Cir. 1995), *abrogated on other grounds*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014).  To that end, the district court held that Tiara Yachts couldn't recover under § 1132(a)(2) because its complaint sought recovery on behalf of itself, not the Plan.

We do not read the complaint as narrowly as the district court did, however.  True, the complaint does not specify that recovery is "for the Plan."  But in analyzing whether ERISA plaintiffs seek recovery on behalf of a plan, we have explained that courts should not elevate

---

[9]Tiara Yachts' complaint did not specify the provision or provisions under which it sued.  That said, it sought damages, restitution, disgorgement, and a declaratory judgment.  BCBSM argued in its motion to dismiss that neither § 1132(a)(2) nor (a)(3) could provide Tiara Yachts its desired relief.  Then, in its opposition, Tiara Yachts argued both sections *could* provide it relief, but not that other civil enforcement provisions should apply.  Accordingly, on appeal, the parties dispute only whether §§ 1132(a)(2) and (a)(3) can provide Tiara Yachts relief, not whether any other provisions could do so.  So that is the focus of our analysis here.

form over substance. *See Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 680–81 (6th Cir. 2008). In *Tullis*, for example, we held that the plaintiffs satisfied § 1109(a), and accordingly could collect damages on the plan's behalf, even though the complaint referred only to their individual damages and "did not specifically allege" that "their plan suffered losses." *Id.* at 680. A few facts colored that inquiry. *First*, the complaint "clearly indicate[d] that the plaintiffs" sought "recovery for losses to their plan accounts caused by fiduciary breaches" in the plaintiffs' capacity as participants. *Id.* at 681. *Second*, the complaint placed the defendant "on notice that the plaintiffs [sought] recovery for losses that occurred to their plans." *Id.* And *third*, the plaintiffs alleged that under their plan's terms, any recovery would "inure to the plan before being allocated" to their specific accounts. *Id.* at 682. Likewise, in *Guyan*, we held that plaintiffs plausibly alleged they sought recovery on behalf of their plans because they alleged "harm to the [p]lans themselves and the [p]lan participants." 689 F.3d at 800–01. That sufficed to put the defendant "on notice" that plaintiffs sought "recover[y] for losses that occurred to the Plans" when the defendant breached its fiduciary duties. *Id.* at 801.

Following these precedents, Tiara Yachts has plausibly alleged that it seeks to collect on the Plan's behalf. Tiara Yachts did not sue in a representative capacity, but it did specify that it sought recovery in its capacity as the Plan's sponsor "for losses to [the] plan account[] caused by fiduciary breaches." *See Tullis*, 515 F.3d at 681. Though the complaint does not specifically call for "recovery on behalf of the[] plan[]," *id.* at 680–81, it plausibly placed BCBSM on notice that Tiara Yachts sought recovery for losses to the Plan. The crux of the complaint is that BCBSM breached its fiduciary duties to the Plan by squandering assets, then wrongfully kept a portion of overpaid Plan assets as administrative fees. Finally, the complaint alleges harm both to Tiara Yachts and to the Plan. *See Guyan*, 689 F.3d at 800–01. For example, it seeks a full accounting of "all payments and uses of Tiara Yachts' Plan assets," as well as "all monies taken or charged by BCBSM to Tiara Yachts." Compl., R. 1, PageID 21. Under *Tullis* and *Guyan*, Tiara Yachts has adequately pleaded that it seeks recovery for the Plan, not for itself.[10]

---

[10]Tiara Yachts sought leave to amend, and its proposed amended complaint stated explicitly that it sought relief on behalf of the Plan. The district court denied leave because, in its view, the proposed amended complaint could not cure the issues with ERISA fiduciary status. But, as described above, the district court erred in its analysis of ERISA fiduciary status, so granting Tiara Yachts leave to amend would not have been futile. *See Riverview*

B.        **Equitable Relief Under 29 U.S.C. § 1132(a)(3)**

Tiara Yachts also seeks recovery under 29 U.S.C. § 1132(a)(3).  That section allows a participant, beneficiary, or fiduciary to sue "to obtain . . . appropriate equitable relief" to "redress . . . violations" or "enforce any provisions" of ERISA or the plan's terms.  To decide whether Tiara Yachts asks for "equitable relief," we look to whether Tiara Yachts could have brought the same kinds of claims and received the same remedy in traditional courts of equity.  *Patterson*, 76 F.4th at 495–96.  We have held that ERISA claims for breach of fiduciary duty and self-dealing are "equitable in nature."  *Id.* at 496.  Two forms of relief that Tiara Yachts seeks—restitution and disgorgement—both were typically available in courts of equity.  *Id.* at 497.  Thus, Tiara Yachts seeks "equitable relief" under § 1132(a)(3).

We note, however, that Tiara Yachts cannot recover under § 1132(a)(3) for BCBSM's overpayments to providers that BCBSM never clawed back—that is, for funds that providers still possess.  As BCBSM correctly points out, to receive equitable relief "in the universe of transferred assets," a plaintiff generally must be able to trace the award "back to 'particular funds or property in the defendant's possession.'"  *Id.* (quoting *Zirbel v. Ford Motor Co.*, 980 F.3d 520, 524 (6th Cir. 2020)).  We have applied the tracing requirement to claims for equitable restitution.  *Id.*  Here, to the extent that Tiara Yachts seeks restitution of funds BCBSM overpaid and never subsequently recovered, those funds are not in BCBSM's possession and thus are not recoverable under § 1132(a)(3).  *Id.*

By contrast, Tiara Yachts' complaint has plausibly alleged facts suggesting that it can seek to recover for restitution or disgorgement of BCBSM's SSP profits under § 1132(a)(3).  We haven't expressly held that claims for disgorgement must satisfy the traceability requirement.  *Id.*  Even if they do, Tiara Yachts has alleged that BCBSM retained specific funds it collected for the SSP.  *See id.* at 497–98.

None of BCBSM's arguments convince us that this relief is unavailable.  BCBSM's assertion that Tiara Yachts essentially seeks "basic contract damages," a legal remedy,

---

*Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).  In any case, under *Tullis* and *Guyan*, Tiara Yachts need not amend its complaint to plausibly allege it seeks recovery on the Plan's behalf.

mischaracterizes the complaint. Appellee's Br. at 56. As noted above, the fact that Tiara Yachts alleges BCBSM broke its promises in the ASC does not transform Tiara Yachts' claim into one under contract rather than ERISA. *See Guyan*, 689 F.3d at 798. In requesting restitution and disgorgement, Tiara Yachts does not, as BCBSM argues, aim to "put [itself] in as good a position as [it] would have been in had the contract been performed." Appellee's Br. at 56 (citation omitted). In other words, Tiara Yachts' desired equitable relief does not amount to expectation damages. Rather, Tiara Yachts asks for BCBSM to return the funds it overpaid from Plan assets and the profits it generated from SSP fees. As far as Tiara Yachts explicitly seeks damages, it can recover those on behalf of the Plan via § 1132(a)(2), as described above, but not § 1132(a)(3).

## CONCLUSION

We reverse the district court's dismissal of Tiara Yachts' complaint and remand for proceedings consistent with this opinion.